FILED

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

2004 NOV -5  A II: 39

ALPHAMED PHARMACEUTICALS CORP.,
U.S. DISTRICT COURT
DISTRICT OF MASS.

Plaintiff,

*MBD - 04 - 10327-RGS*

ORIGINAL ACTION PENDING IN THE
UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIV.; CASE NO.: 03-20078 CIV
ALTONAGA/BANDSTRA

vs.

ARRIVA PHARMACEUTICALS, INC. f/k/a
AlphaOne Pharmaceuticals, Inc., a California
corporation, SPINELLI CORPORATION f/k/a
Spinelli Investigations, Inc., an Arizona
corporation, CTG & ASSOCIATES, LLC, a
Georgia limited liability company, and
NORMAN TRANSETH, an individual,

FILING FEE PAID: *59880*
RECEIPT #_____
AMOUNT $_____
BY DPTY CLK_____
DATE____11/5/04_____

Defendants.

---

## JOHN LEZDEY'S MEMORANDUM OF LAW IN SUPPORT OF HIS EMERGENCY MOTION FOR PROTECTIVE ORDER

### BACKGROUND

This action is currently pending in the United States District Court for the Southern

District of Florida.  On October 11, 2004, this Court issued a subpoena for the deposition of Mr.

Lezdey, setting Mr. Lezdey's deposition for November 9, 2004.  For the following reasons, Mr.

Lezdey requests a brief postponement of his deposition:

On August 7, 2004, John Lezdey, who is seventy-three years old, was returning to his

home in Cape Cod Massachusetts when a woman suddenly appeared from the woods and began



taking his photograph.[1]  Startled by the woman's sudden appearance, Mr. Lezdey fell backwards on concrete stairs, severely injuring his back.  As evidenced by the declaration of Dr. Achilles Papavasiliou, Mr. Lezdey's treating neurosurgeon, Mr. Lezdey was diagnosed with a L4 vertebrae burst fracture with nerve root compression.  See Papavasiliou Declaration attached hereto as Exhibit A.  As a result of his injury, Mr. Lezdey cannot sit upright for more than ten minutes without suffering severe back pain.  He is required to wear a back brace at all times and may have to undergo surgery if his condition does not improve.  See Exhibit A at ¶4.

Mr. Lezdey's most recent examination on October 13, 2004, revealed that his fracture has not yet healed.  See Exhibit A at ¶4.  Further, as per his Doctor's orders, Mr. Lezdey cannot travel even short distances.  See Exhibit A at ¶5.  Mr. Lezdey is scheduled to for a follow up MRI on December 15, 2004.  See Exhibit A at ¶4.

On October 11, 2004, Arriva subpoenaed Mr. Lezdey for deposition for November 9, 2004 and on October 18, 2004, Defendant Spinelli Investigations, Inc. ("Spinelli") cross-noticed Mr. Lezdey's deposition for that same date.  Given Mr. Lezdey's condition, undersigned counsel attempted to persuade counsel for Arriva to simply postpone Mr. Lezdey's deposition until after his December 15, 2004, follow-up MRI, when Mr. Lezdey's condition could be reassessed.  See Letter from James McDonald Dated October 25, 2004, attached hereto as Exhibit B.  In furtherance of this request, the undersigned counsel furnished Arriva's counsel with Dr. Papavasiliou's declaration, along with the medical records attached thereto, as well as a letter from John Lezdey describing his current condition.  See Letter from John Lezdey, attached hereto as Exhibit C.

---

[1] Mr. Lezdey also spotted this same woman taking his photograph on a prior occasion.  Mr. Lezdey believes that the unidentified woman was hired by Defendant Arriva and/or Spinelli, as part of their ongoing surveillance of Mr. Lezdey and his family.

Despite Mr. Lezdey's reasonable request to have his deposition postponed, Arriva's counsel will not agree to postpone Mr. Lezdey's deposition. <u>See</u> Letter from Jonathan Goodman, Dated October 28, 2004, attached hereto as Exhibit D. Rather than extend Mr. Lezdey the professional and human courtesy of postponing the deposition, Arriva's counsel added insult to injury by suggesting that Mr. Lezdey's deposition take place in his personal home. Understandably, Mr. Lezdey does not want to invite Arriva, the very party that has relentlessly pursued him around the country with lawsuits and subjected he and his family to intrusive surveillance, or Spinelli, who spearheaded the surveillance on behalf of Arriva, into his home. Not to mention the fact that regardless of where the deposition is taken, as evidenced by the documentation provided to Arriva's counsel, Mr. Lezdey will undoubtedly suffer unnecessarily if he is forced to sit through the rigors of Arriva's and Spinelli's deposition.

It bears emphasis that despite all of Arriva's aggressive insistence that Mr. Lezdey's deposition be taken immediately, and without regard to his health, Mr. Lezdey *is not a party* to this litigation, nor is he a principal of AlphaMed. Clearly, given that discovery does not close in this case until April 8, 2005, Defendants will not suffer any prejudice if Mr. Lezdey's deposition is postponed until Mr. Lezdey's back has had a chance to heal.

Since Mr. Lezdey's deposition is currently set for November 9, 2004, this Motion must be heard on an emergency basis.

## ARGUMENT

"Upon motion by a party or by the person from whom discovery is sought...and for good cause shown...the court...may make any order which justice requires to protect a party or person

3

from annoyance...oppression or undue burden or expense...(2) that the disclosure or discovery may be had only on specified terms and conditions..." Fed.R.Civ.P. 26(c).

It is well settled that "if an oral deposition will pose a threat to a witness' health, the court will exercise its discretion in favor of a protective order." McCorhill Publishing, Inc. v. Kraus-Thomson Organization, Ltd., 91 B.R. 223, 225 (Bankr. S.D.N.Y. 1998); Motsinger v. Flynt, 119 F.R.D. 373, 378 (M.D.N.C. 1988) ("A doctor's certificate setting out plaintiff's illness will often justify a short stay in the taking of a deposition"); Medlin v. Andrew, 113 F.R.D. 650 (M.D.N.C. 1987) (postponing plaintiff's deposition based upon psychiatrist's certificate that plaintiff's health may be impaired by the deposition).

Given Mr. Lezdey's severe back injury, his health will be severely jeopardized if he is forced to sit through the rigors of having his deposition taken by both Arriva and Spinelli's counsel. Accordingly, Mr. Lezdey requests a brief postponement of his deposition, until such time that he back has sufficiently healed.

Counsel for Arriva[2] and Spinelli has been conferred with and they do not consent to the relief requested in this Motion.

## CONCLUSION

For the reasons set forth above, John Lezdey's emergency motion for a protective order should be granted.

---

[2] This Motion was originally filed in the United States District Court for the Southern District of Florida. As per Arriva's request, attached as Exhibit E, is Arriva's Memorandum in opposition to this Motion.

Respectfully submitted,
JOHN LEZDEY

By his attorneys,

Matthew R. Roberts (BBO# 655057)
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
617-289-9200

Of Counsel:

James E. McDonald
Eric Saida
DUANE MORRIS LLP
200 South Biscayne Blvd.
Suite 3400
Miami, Fl 33131-2397

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. Mail and Facsimile this 5th day of November, 2004 upon Jonathan Goodman, Esq., Akerman Senterfitt, One Southeast Third Avenue, 28th Floor, Miami, FL 33131-1714, Jason A. Crotty, Esq, Morrison & Foerster, L.P. 425 Market Street, San Francisco, CA 94105-2482, Jay Green, Esq., Green, Ackerman & Frost, 1200 N. Federal Highway, Suite 301, Boca Raton, FL 33432, and Steven E. Eisenberg, Esq., Feldman Gale, Miami Center, 19th Floor, 201 South Biscayne Boulevard, Miami, FL 33131.

By: _____

5

# DECLARATION OF DR. ACHILLES PAPAVASILIOU

I, Achilles Papavasiliou, M.D., declare as follows:

1.  I am a neurosurgeon practicing in Cape Cod, Massachusetts. I have personal knowledge of the following facts and could competently testify thereto, if called on to do so.

2.  On August 9, 2004, I consulted with John Lezdey who had been admitted to the Cape Cod Hospital as a result of a fall he had sustained on August 7, 2004. Mr. Lezdey was diagnosed with a L4 vertebrae burst fracture with nerve root compression. Attached hereto as Exhibit 1 is a true and correct copy of the radiology report reflecting the results of a CT scan performed on Mr. Lezdey's spine.

3.  Mr. Lezdey was transferred to a rehabilitation facility on August 11, 2004, where he remained until he was discharged to his home in Cape Cod on August 20, 2004, for in-home therapy.

4.  I most recently examined Mr. Lezdey on October 13, 2004. Mr. Lezdey's vertebrae fracture has not yet healed. Mr. Lezdey is required to continue wearing a back brace at all times when he is up. Mr. Lezdey may be required to undergo surgery if his condition does not improve or if further examination reveals that he has suffered neurological deterioration. Mr. Lezdey is scheduled to return in six weeks for another MRI. Attached hereto as Exhibit 2 is a true and correct copy of my most recent examination report.

5.  In his current condition Mr. Lezdey is unable to travel even short distances. I have advised Mr. Lezdey that he should not attempt to travel to Arizona to participate in a legal proceeding that I have been informed is scheduled to begin on November 24, 2004. Any such travel would be extremely painful and may exacerbate Mr. Lezdey's condition.

DECLARATION OF DR. ACHILLES PAPAVASILIOU

**EXHIBIT**

**A**

1     I declare under penalty of perjury pursuant to the laws of the State of Arizona that the

2     foregoing is true and correct.

3

4     Executed this _19_ day of October 2004 at ___Hyannis___, Massachusetts.

5

6

7                                Dr. Achilles Papavasiliou

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

[ Progress Note] [John Lezdey] [23548]

# Progress Note

| | | | |
|---|---|---|---|
| **Patient Name:** | John Lezdey | **Provider:** | Achilles K. Papavasiliou MD |
| **Patient ID:** | 23348 | | |
| **Sex:** | Male | **Location:** | Neurosurgeons of Cape Cod, P.C. |
| **Birthdate:** | October 9, 1931 | **Visit Date:** | October 15, 2004 |

## Chief Complaint

- ▸ Back Pain

## History Of Present Illness

The patient is a 73 year old male who was recently evaluated for low back pain and returns following interventions. He reports the pain has been persistent. The pain is currently 5/10 in severity , has an aching quality and does not radiate.

He has no reported additional symptoms. The patient denies paresthesias, weakness, and urinary incontinence. The pain is worse as the day goes on and he reports the pain does not prevent the patient from sleeping .

He has been treated with physical therapy, NSAIDs, and bedrest. The physical therapy was partially effective in relieving the pain. The patient has undergone a recent lumbar radiographs that revealed a herniated disc and l4 compression fracture that is healing.

## Review of Systems

**Constitutional**
  o Denies : fever, chills
**Cardiovascular**
  o Denies : chest pain
**Respiratory**
  o Denies : shortness of breath, cough

## Physical Examination

**Constitutional**
  o Appearance : well-nourished, well developed, alert, in no acute distress
**Musculoskeletal**
  o Spine :
    ▪ Inspection/Palpation : no cervical, thoracic or lumbar lesions or deformities, paraspinal musculature nontender to palpation
**Neurologic**
  o Motor Examination :
    ▪ RLE Strength : strength normal
    ▪ RLE Motor Function : tone normal
    ▪ LLE Strength : strength normal
    ▪ LLE Motor Function : tone normal
  o Reflexes :
    ▪ RLE : knee reflex 2+, ankle reflex 2+
    ▪ LLE : knee reflex 2+, ankle reflex 2+
  o Sensation :
    ▪ Light Touch : sensation intact to light touch in lower extremities
    ▪ Light Touch : sensation intact to light touch in lower extremities

## Assessment

[ Progress Note] [John Lezdcy] [23548]

* Fracture of lumbar vertebra, closed 805.4

Plan
    Disposition
        ○ RTC in/on 6 weeks +/- 2 days (1249).
Xrays show fracture is healing at L4. Neurologically stable. Will get MRI and xrays. Continue brace for 6 weeks.

Electronically Signed by: Achilles K. Papavasiliou MD on October 15, 2004 11:33:59 AM

EXHIBIT 2

# CAPE COD HOSPITAL    CLAIM NO 59Y830324

**RADIOLOGY DEPARTMENT**
27 Park St.
Hyannis, MA 02601
(508) 771-1800

Exam Performed at: CAPE COD HOSPITAL

Medical Record No: 075-15-79
Name: LEZDEY, JOHN
Ord Phys: PAPAVASILIOU MD, ACHILLES
Att Phys: CLAYTON M.D., SHERRI
DOB: 10/09/1931  Age: 72    Sex: M
Acct: 55645683    Radiology #: 75-15-79
Status: DIS IN Loc: M3.3522
Patient Phone: 508-240-1514

Reason For Exam:  L4 FRACTURE

| EXAM# | TYPE/EXAM | EXAM DATE | TIME |
|-------|-----------|-----------|------|
| 001643877 | CT/L-SPINE W/O CONTRAST | 08/10/2004 | 1042 |
| 001644110 | CT/COR,SAG,3D RECONSTRUCTION | 08/10/2004 | 1042 |

NONCONTRAST CT SCAN OF THE LUMBAR SPINE:

   CLINICAL HISTORY:  L4 compression fracture.

   TECHNIQUE:    CT scan of the lumbar spine was performed
including sagittal and coronal reformatted images.

   FINDINGS:  There is a compression fracture of the L4
vertebral body which involves the posterior vertebral body wall.
There is approximately 25% loss of vertebral body height.  There is
buckling of the posterior vertebral body wall into the spinal canal
resulting in moderate to severe stenosis.  Severe spinal stenosis is
also seen at the L3-4 disc level due to disc bulging and ligamentous
thickening.

   The remainder of the vertebral body heights and disc levels
are unremarkable.

IMPRESSION:

   - 25% burst type compression fracture of the L4 vertebral
body.  There is posterior buckling of the vertebral body wall
which results in moderate to severe canal stenosis.  There is
also moderate to severe canal stenosis of the L3-4 disc level
due to disc bulging.

         ** REPORT SIGNATURE ON FILE 08/10/2004 **
         Reported By: David Rowe, MD
         Signed By:   Rowe MD, David

CC: SHERRI CLAYTON M.D.; ACHILLES PAPAVASILIOU MD

Transcribed Date/Time: 08/10/2004 (1221)
Transcriptionist: N-KAN
Printed Date/Time: 08/20/2004 (0955)

PAGE 1              Signed Report Printed From PCI

**DuaneMorris**
1904-2004
100th Anniversary

| | |
|---|---|
| | *FIRM and AFFILIATE OFFICES* |
| | NEW YORK |
| | LONDON |
| | CHICAGO |
| | HOUSTON |
| | PHILADELPHIA |
| | SAN DIEGO |
| | SAN FRANCISCO |
| | DETROIT |
| | BOSTON |
| | WASHINGTON, DC |
| | ATLANTA |
| | MIAMI |
| | PITTSBURGH |
| | NEWARK |
| | ALLENTOWN |
| | WILMINGTON |
| | HARRISBURG |
| | BANGOR |
| | PRINCETON |
| | WESTCHESTER |

JAMES E. MCDONALD, P.A.
DIRECT DIAL: 305.960.2230
E-MAIL: jemcdonald@duanemorris.com

www.duanemorris.com

October 25, 2004

*Via Facsimile*

Jonathan Goodman, Esq.
Akerman Senterfitt
One S.E. 3rd Street, 28th Floor
Miami, FL 33131-1714

     Re:     Depositions in Cape Cod, MA
               AlphaMed Pharmaceuticals v. Arriva
               Case No.: 03-20078-CIV-Altonaga

Dear Mr. Goodman:

    Enclosed is a declaration of Dr. Achilles Paparasiliou, John Lezdey's treating neurosurgeon with attachments.

    As you know, John Lezdey fractured his back on August 7, 2004. Other than visits to his doctor, Mr. Lezdey is confined to his Cape Cod home, and accordingly, it is risky for him to travel to Hyanis, MA for his deposition scheduled for November 9, 2004. I am informed he will be undergoing another MRI exam on December 15 at which time we will know whether he can travel outside the home. I would like to reschedule his deposition to a date after December 15, 2004 at which time we should know his physical conditions.

    If you agree and postpone the depositions, I would suggest we also reschedule Mrs. Lezdey to a date to coincide to Mr. Lezdey's deposition.

    Please let me have your response so I can file appropriate papers with the court in the event we cannot come to an agreement.

                  Sincerely,

                  James E. McDonald, P.A.

JEM/yap
Enclosures

DUANE MORRIS LLP

200 SOUTH BISCAYNE BOULEVARD, SUITE 3400
MIA\138193.1

**EXHIBIT**
**B**

PHONE: 305.960.2200   FAX: 305.960.2201

James Mc Donald Esq

Since discharge from the rehabilitation hospital, I have not left my home except to go to the hospital or the doctor. To go there I require a specific type of vehicle since I cannot get into a car or an SUV which is not too high.

The only time outside of the house was to walk with a cane with a nurse early October to see if I could manage in case of an emergency. When the doctor learned I was using a cane, he told me to stop and only use the walker. I cannot use the walker to go to hospital or doctors because there are steps and irregular ground.

Also be aware that I cannot sit on a hard surface for more than 10 minutes with having back pain.

John Ledley

John LEDLEY

EXHIBIT

C



Akerman|Senterfitt
ATTORNEYS AT LAW

Fort Lauderdale                              One Southeast Third Avenue
Jacksonville                                 SunTrust International Center
Miami                                        28th Floor
Orlando                                      Miami, Florida 33131-1714
Tallahassee
Tampa                                        www.akerman.com
Washington, DC                               305 374 5600 tel    305 374 5095 fax
West Palm Beach

October 28, 2004[1]

**VIA FAX**

James E. McDonald, Esq.
Duane, Morris & Heckscher, LLP
200 South Biscayne Boulevard
Suite 3410
Miami, Florida 33131

   Re: **AlphaMed Pharmaceuticals vs. Arriva Pharmaceuticals**
      **(Case No. 03-20078 CIV Altonaga) (S.D. Fla.)**

Dear Mr. McDonald:

   I am writing in response to the additional materials you forwarded to me this afternoon. I have reviewed both the supplemental declaration of the doctor and John Lezdey's handwritten note.

   The supplemental declaration is virtually identical to the first declaration. The doctor does not specifically say that he has advised Mr. Lezdey to not give a deposition near his home in Massachusetts. It still appears as though it was drafted for use in the Arizona trial. For example, it still was signed pursuant to Arizona law and mentions the trial scheduled to start on November 24, 2004 in Phoenix.

   The handwritten note from Mr. Lezdey was not in the form of an affidavit or a sworn declaration (as specifically authorized by federal statute). You say that this is not significant. I could not disagree more. I have been telling you for some time that I expected competent *evidence* and I specifically mentioned affidavits. I requested again today, in an email, that the letter be signed under penalty of perjury. Given Mr. Lezdey's history of avoiding depositions in the related Arizona case, the numerous contempt citations and the findings in the Arizona injunction and final judgment, I view the absence of an affidavit or declaration to be especially noteworthy.

   Notwithstanding all of this, we are willing to work with you and Mr. Lezdey. There is no need to postpone the deposition. The solution is simple: we can depose Mr. Lezdey in his

---

[1] This letter was sent by email to Mr. McDonald and Mr. Saida on October 27, 2004.



**EXHIBIT**

D

11/04/2004 18:09 FAX     DUANE MORRIS MIAMI     ☑012
Case 1:04-mc-10327-RGS   Document 2   Filed 11/05/2004   Page 16 of 31
OCT-28-04 08:58AM   FROM-                     T-730   P.09/03   F-901

James E. McDonald, Esq.
October 28, 2004
2

home. That will eliminate the need for him to travel anywhere. And this should not generate any hardship because you say that Mr. Lezdey will be home anyway.

Of course, I need your agreement to arrange this because I cannot compel Mr. Lezdey to make his Cape Cod home available for his deposition. All I can do is subpoena him to a deposition at an appropriate facility (e.g., a nearby hotel). I have not raised this alternative with Mr. Eisenberg, who cross-noticed the deposition on behalf of Codefendant Spinelli Corporation. But I predict that Mr. Eisenberg will not object to this reasonable resolution.

Please let me know if this suggested alternative is acceptable. If not, you will need to file a motion for protective order because we will not release John and Noreen Lezdey from the deposition subpoenas we served on them.

If you do file a motion, I am putting you on notice now that I object to any attempt to classify it as an "emergency." Any emergency was created through procrastination. You have known about these depositions for several weeks but you waited until yesterday to send me a doctor's affidavit and waited until today to send me an unsworn letter from Mr. Lezdey.

As previously requested, please make sure to attach both this letter and my prior letter as exhibits so that the Court is presented with a balanced background and understands our position. We intend to submit a response to any motion, of course, but, in the event that you seek relief before we have a reasonable opportunity to respond, then I think the Court needs to appreciate our view and the history and background underlying any motion.

I look forward to hearing from you.

Thank you.

Very truly yours,

AKERMAN SENTERFITT

Jonathan Goodman

JG:cvl
cc:   Julie E. Nevins, Esq.
       Stephen Eisenberg, Esq. (via fax)

{M2172058;1}

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 03-20078-CIV-ALTONAGA/BANDSTRA

ALPHAMED PHARMACEUTICALS CORP.,
a Florida corporation,

      Plaintiff,

vs.

ARRIVA PHARMACEUTICALS, INC.,
f/k/a AlphaOne Pharmaceuticals, Inc.,
a California corporation,
SPINELLI CORPORATION, f/k/a Spinelli
Investigations, Inc., an Arizona corporation,
CTG & ASSOCIATES, LLC, a Georgia
limited liability company and
NORMAN TRANSETH, an individual,

      Defendants.
_____/

**ARRIVA PHARMACEUTICALS, INC.'S MEMORANDUM IN OPPOSITION TO JOHN
LEZDEY'S "EMERGENCY" MOTION FOR PROTECTIVE ORDER**

    Defendant Arriva Pharmaceuticals, Inc. ("Arriva") hereby submits its Memorandum in

Opposition to John Lezdey's ("Lezdey") "Emergency" Motion for Protective Order:

## I.    INTRODUCTION

    Lezdey, a known discovery obstructionist and a fugitive from justice with a pending

Arizona state court bench warrant out for his arrest, seeks emergency protection from this Court

to postpone for an indefinite period a deposition pursuant to a subpoena issued from the United

States District Court for the District of Massachusetts. Not only does this Court lack jurisdiction

to rule on Lezdey's Emergency Motion for Protective Order, but Lezdey is not entitled to the

protection he seeks. Lezdey's motion completely fails to demonstrate the good cause needed for



{M2173070;1}

entry of a protective order. Lezdey seeks relief to postpone the deposition until some time after December 15, 2004, when he is scheduled for an MRI to assess his condition. However, noticeably absent from John Lezdey's motion is a specific request to postpone the deposition for a specific amount of time. The motion is nothing more than a request for an indefinite delay.

Moreover, the judge who presided in the related Arizona litigation previously condemned Lezdey for a similar "I'm-too-ill-to-be-deposed" tactic and **held him in contempt after the Court learned that Lezdey had testified for approximately two and a half hours in a federal bankruptcy case while simultaneously professing to be too sick to give a deposition in the state court case.**

On October 13, 2004, Arriva served a deposition subpoena on Lezdey at his home in Cape Cod, Massachusetts. A copy of the subpoena and notice are attached hereto as Composite Exhibit A. The deposition is scheduled for November 9, 2004 at a hotel in Hyannis, Massachusetts, which is a short distance from Lezdey's home in Cape Cod, Massachusetts.

Lezdey claims that he cannot submit to a deposition on November 9 because he is recovering from a fractured vertebra and was "ordered" by his doctor not to travel even short distances. *See* Lezdey's Emergency Motion for Protective Order at 2. In support of his motion, Lezdey submitted a brief, conclusory declaration from his treating neurosurgeon, Dr. Achilles Papavasiliou, that does not specifically address the relief sought in the motion -- relief from a deposition in Hyannis, Massachusetts. In the declaration, Dr. Papavasiliou states:

> In his current condition Mr. Lezdey is unable to travel even short distances. I have advised Mr. Lezdey that he should not attempt to travel to **Arizona** to participate in a legal proceeding that I have been informed is scheduled to begin on November 24, 2004. Any such travel would be extremely painful and may exacerbate Mr. Lezdey's condition.

<u>See</u> Declaration of Dr. Achilles Papavasiliou ¶5 (emphasis added), which is attached to Lezdey's motion.

In his declaration, Dr. Papavasiliou did not state that he ordered Lezdey not to travel short distances. Dr. Papavasiliou did not state that Lezdey's health will be jeopardized if he travels a short distance for a deposition. Although the doctor states that "[a]ny such travel" . . . "may exacerbate John Lezdey's condition," the referenced travel appears to refer to a long trip from Cape Cod, Massachusetts to the trial in Arizona and not a short trip from Cape Cod to Hyannis. In addition, the doctor's declaration appears to be geared toward relieving Lezdey from having to travel to Arizona for a pending state court trial in a related case -- the case where the court issued a warrant for his arrest, styled *Wachter et al v. Lezdey et al.*, Case No. 99-009334 (Superior Court of Arizona Maricopa County) (the "Arizona Action").[1]

In support of his motion, Lezdey also submitted an <u>unsworn, handwritten statement,</u> saying that he does not travel from his house. Arriva's counsel specifically and repeatedly requested that Lezdey provide <u>competent proof,</u> such as a declaration under penalty of perjury or affidavit, specifying that he has not (and does not) travel for non-medical purposes. Lezdey simply refused to provide a statement subject to penalty of perjury. Lezdey did not need to leave his house to provide a declaration pursuant to 28 U.S.C. §1746, which authorizes an unsworn declaration as a statutory substitute for an affidavit. This refusal is significant considering that the court in the Arizona Action found that he gave false testimony and evaded discovery. *See* Section II., *infra.*

Neither Lezdey's unsworn statement nor Dr. Papavasiliou's declaration support the assertion in the motion that Lezdey cannot sit upright for more than 10 minutes without enduring

---

[1]    The Arizona Action is between a founder of Arriva, formerly known as AlphaOne, (Dr. Allan Wachter) and founders of AlphaMed (John, Jarett, and Darren Lezdey).

back pain. The doctor said absolutely nothing on this issue (even though the motion incorrectly cites to his affidavit for so-called support for conclusory statement), and Lezdey wrote: "Also be aware that I cannot sit on a **hard surface** for more than 10 minutes with [sic] having back pain." *See* Exhibit C to Lezdey's Emergency Motion for Protective Order (emphasis added).

Neither Dr. Papvasiliou's declaration nor Lezdey's unsworn statement establish good cause for entry of a protective order, especially when framed by Lezdey's history of obstructing discovery in the Arizona Action. Lezdey's credibility has been severely and repeatedly criticized by the Arizona state court. The Arizona judge excoriated Lezdey and his sons Jarett and Darren Lezdey, who are currently the president and vice president of plaintiff AlphaMed Pharmaceuticals Corp. ("AlphaMed"), for obstructing discovery:

> Counsel are advised that this Court will not grant a stay of this order because Plaintiff's attorney has been attempting to take the depositions of these Defendants [John, Jarett and Darren Lezdey] for nearly one year and Defendants have **consistently thrown road blocks** in Plaintiffs' path before and during each attempt. Plaintiffs' counsel has traveled to Florida on three occasions to take the depositions without success. (emphasis supplied).

A copy of the Arizona order is attached as Exhibit **B**.



Lezdey cannot be permitted to throw discovery road blocks in this case. Although he is not officially a party, that technicality is a mere formality. He is one of the most material witnesses in this case. He is a founder of AlphaMed. He is a former shareholder and director of AlphaMed. He is AlphaMed's patent counsel. And he is believed to be the driving force behind this litigation. Moreover, the parties are scheduled for mediation on January 5, 2004. For the mediation to be meaningful, Lezdey's deposition needs to be taken.[2]

Instead of submitting adequate proof for entry of a protective order, Lezdey accuses *Arriva* of being unreasonable. But Arriva has been very reasonable in attempting to

---

[2] The deadline for mediation in this case is February 25, 2005. [D.E. 217]. With several parties and lawyers involved in the case, scheduling the January 5 mediation date took considerable effort.

accommodate Lezdey's condition. Arriva offered to take the deposition at a hotel closer to his home. *See* Oct. 26, 2004 Letter from Jonathan Goodman to James McDonald, attached hereto as Exhibit C. Arriva also offered to take the deposition in Lezdey's Cape Cod house, so he would not have to travel. *See* Letter attached to Lezdey's Emergency Motion for Protective Order at Exhibit D. In addition, Arriva offered to take the deposition with repeated breaks. *See id.*

Moreover, Lezdey's so-called "Emergency" Motion for Protective Order is not a true emergency. Rather, it is an emergency by Lezdey's own design. Lezdey should have filed his motion in the United States District Court for the District of Massachusetts, where the deposition subpoena was issued.[3] In addition, Lezdey should have timely submitted competent proof to defense counsel, instead of waiting until the deposition date was upon him. Likewise, he should have filed his "emergency" motion sooner and not waited 16 days after service of the subpoena and 11 days before the scheduled deposition to seek the relief requested.

## II.    BACKGROUND

This lawsuit is a single installment in a long history of contentious litigation between the founders of Arriva (formerly known as AlphaOne) and the founders of AlphaMed. In the Second Amended Complaint [D.E. 263], AlphaMed claims that Arriva has gone to extreme measures to unfairly compete with AlphaMed to bring to market pharmaceuticals derived from a protein called alpha 1-antitrypsin ("AAT") for the treatment of otitis media (ear infections) and other conditions.

---

[3] Lezdey and his counsel should be familiar with this procedure as the parties in this case litigated over subpoenas directed to third parties located in other jurisdictions. In the Northern District of Florida, the parties litigated Arriva's motion to quash a subpoena that was issued by the U.S. District Court for the Northern District of Florida. In addition, in the District of Columbia, the parties litigated AlphaMed's motion to compel production of documents from the Federal Bureau of Investigation pursuant to a subpoena that was issued in the District of Columbia. On or about October 14, 2003, AlphaMed filed the motion to compel, presumably, because it knew that the U.S. District Court for the District of Columbia had the jurisdiction and authority to rule on the subpoena it issued.



Lezdey is a former director and employee of AlphaOne, and he is a founder of AlphaMed. He was one of the original officers and directors of AlphaMed and now portrays himself as the company's patent counsel. Lezdey's sons are Jarett and Darren Lezdey -- the president and vice president of AlphaMed, respectively. John, Jarett and Darren Lezdey are the driving force behind AlphaMed -- a purported pharmaceutical company that claims to be trying to develop and commercialize AAT-derived pharmaceutical products. Lezdey is also the one who prosecuted the 859 patent at issue in this lawsuit.

John Lezdey has a long and documented history of being untruthful and obstructive in court proceedings and discovery. Here are some highlights from this unfortunate history:



1.    In an October 12, 2000 Contempt Order (Exhibit **D**, attached), the court in the Arizona Action found that **Lezdey testified falsely** in his November 22, 1999 deposition and **obstructed discovery by purporting to be too ill to travel for an August 19, 2000 deposition**. October 12, 2000 Contempt Order. The court wrote:

> . . . In the June 23, 2000, telephonic conference with the Court, John Lezdey reiterated that he was too ill to travel to Arizona to participate in his deposition or hearings. Mr. Lezdey assured the Court that it could contact his physician, Dr. Mark Hepp, to confirm the same. The Court attempted on more than one occasion to contact Dr. Hepp, who, as was his right, did not return the Court's telephone calls.
>
> The Court does not take lightly a litigant's claim that his or her health will be jeopardized by participating in court proceedings and will always give the benefit of the doubt to such a litigant. However, the Court fears that John Lezdey is playing a "cat and mouse" game with Plaintiffs' counsel and the Court. Attorney Joseph R. Meaney's August 10, 2000, letter to Mr. Ditsch, one of Plaintiffs' attorneys, could not reasonably be interpreted in any other way than that it would not be necessary for Plaintiffs' counsel to appear for Mr. Lezdey's state court deposition on August 14, 2000, because Mr. Lezdey's health did not permit him to appear.
>
> The fact that John Lezdey appeared on the same day and testified for two-and-a-half hours in a bankruptcy court deposition, in a proceeding he initiated presumably for his own advantage, belies his claim that he was too ill to be

deposed in the state court action. The Court finds that John Lezdey is in contempt of the deposition subpoena served on him and this Court's June 23, 2000, order requiring him to appear for his deposition.

Exhibit **D** at ¶7.

2.    On November 7, 2000, the Arizona court issued an order rebuking John, Jarett and Darren Lezdey for **obfuscating the plaintiffs' discovery efforts** in the Arizona Action. A copy of the November 7, 2000 Order is attached as Exhibit **B**.

3.    In a November 27, 2000 Amended Injunction Order, the Arizona court again found that "[o]n 11/22/99, **John Lezdey testified untruthfully** in his deposition in this action that he was not on the Board of Directors of AlphaMed and that AlphaMed did not then (purport) to have a License Agreement from Protease" (emphasis added). The Amended Injunction is attached as Exhibit **E**.

4.    During a January 15, 2002 bench trial in the Arizona Action, the court made several significant findings against John Lezdey and his two sons:

> The Court finds that the actions of John Lezdey, an attorney licensed to practice law, are **beyond outrageous**. They're difficult for this Court to comprehend both from an economic point of view in that he appears to be dead set to kill the goose that may lay the golden egg, but he's also used his position as an attorney to **abuse the plaintiffs**, to abuse the plaintiffs' associates, and beyond, just abuse to the legal process, he's abused them by - - he and his family have abused them by **incredibly outrageous acts of threatening death** to Dr. Wachter's wife and children. Certainly one would hope that every judge of this Court would agree with me that that type of conduct cannot be tolerated by any litigant, much less - - much less a litigant who is an attorney.
>
> In addition, the evidence has shown that Mr. John Lezdey has **continually lied** in this Court, he has **violated earlier orders** in this Court, and he has the nerve, apparently, to leave this Court and - - leave this very courthouse and go to the branch bank of Wells Fargo and wipe out the company's bank account, in violation of the Court's Injunction.
>
> In addition to all that, **many of the documents** that Mr. Lezdey and the other defendants have put forth both to Dr. Wachter and prospective investors **have been false**. There has been evidence of **forgery**. There has been severe evidence

of **breach of fiduciary duty** by John Lezdey, and there is very strong evidence that Darren and Jarrett Lezdey have cooperated with it.

In 30 years of law practice in the commercial law area, I've seen some **shocking things, but nothing comes close to the conduct of the defendants in this case.**

(emphasis added) (trial transcript excerpt attached as Exhibit F).

5.     In a February 11, 2003 Order (Exhibit G, attached), United States District Judge Paul Rosenblatt concluded that John Lezdey "has a **long history of obstreperous behavior** in connection with the handling of this litigation." (emphasis added).

6.     The Arizona judge who was presiding over the litigation against John, Jarett and Darren Lezdey issued an order for an arrest warrant against John Lezdey for violating numerous contempt orders, such as the October 12, 2000 Contempt Order cited above.  A copy of the judge's order for an arrest warrant is attached as Exhibit H.

7.     John Lezdey remains a fugitive from justice.  He has not surrendered to the sheriff's department in Arizona and he has not purged himself of the contempt orders entered in the Arizona Action.  Dr. Allan Wachter, a plaintiff in the Arizona Action and a founder of Arriva (formerly known as AlphaOne), filed a motion in the Arizona Action pursuant to the fugitive disentitlement doctrine, which is still pending before that court.  Oral argument on the motion was held on November 1, 2004.

## III.     MEMORANDUM

### A.     This Court Lacks Jurisdiction Over the Subpoena for Deposition of John Lezdey and John Lezdey's "Emergency" Motion for Protective Order

This Court lacks jurisdiction over the deposition subpoena issued from the U.S. District Court for the District of Massachusetts.  Lezdey should have filed his "emergency" motion in the district court in Massachusetts, instead of dawdling with the "emergency" motion in South Florida.

{M2173070;1}                              8

Only a court from which a subpoena was issued has jurisdiction to act on that subpoena.
*See* Fed.R.Civ.P. 45(c); *see also In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998) (holding
that district court erred in transferring motion to quash a subpoena issued by the D.C. district
court for the deposition of a law firm located in D.C. to a district court in Arkansas where the
case was pending because only the court that issued the subpoena has the authority to act on it);
*In re Digital Equip. Corp.*, 949 F.2d 228, 231 (8th Cir. 1991) (holding that South Dakota district
court in which action was pending lacked jurisdiction to rule on objections to deposition
subpoena issued by the district court in Oregon where the discovery was to be conducted).

Only a court in the district where a deposition is to be taken may issue a protective order
concerning the deposition. Fed.R.Civ.P. 26(c).[4]  The Advisory Committee Notes to Rule 26
explains:

> The subdivision recognizes the power of the court in the district where a
> deposition is being taken to make protective orders. Such power is needed when
> the deposition is being taken far from the court where the action is pending. The
> court in the district where the deposition is being taken may, and frequently will,
> remit the deponent or party to the court where the action is pending.

Fed.R.Civ.P. 26(c), Advisory Committee Notes, 1970 Amendment. Although the court located
in the district where the deposition is to be taken can "remit" a motion for protective order to the
district where the action is pending, the person subpoenaed must let the court in the district
where the deposition is to be taken make that decision.[5]  Instead, Lezdey has usurped the

---

[4]  Specifically, Rule 26(c) provides:
> Upon motion by a party or by the person from whom discovery is sought, accompanied by a
> certification that the movant has in good faith conferred or attempted to confer with other affected
> parties in an effort to resolve the dispute without court action, and for good cause shown, the
> court in which the action is pending <u>or alternatively, on matters relating to a deposition, the
> court in the district where the deposition is to be taken may make any order which justice
> requires to protect a party or person</u> from annoyance, embarrassment, oppression, or undue
> burden or expense . . . . (emphasis added).

[5]  According to *In re Sealed Case*, remitting a motion regarding a subpoena is different that transferring the motion
to the district where the action is pending. Remitting involves a stay of the proceedings on the motion in the district

authority of the district court in Massachusetts by jumping the jurisdictional gun and filing his "emergency" motion for protective order here.

If Lezdey files this motion (or a similar motion) in federal court in Massachusetts, then Arriva specifically requests that he attach a copy of this memorandum as an exhibit to the motion so that the court there will have a more-complete understanding of the procedural background. Likewise, if this Court (here in the Southern District of Florida) denies Lezdeys' motion on jurisdictional grounds, then Arriva requests that the order denying the motion also require him to attach a copy of this memorandum if he decides to file an eleventh hour motion in Massachusetts federal district court. Otherwise, a Massachusetts district court judge confronted with a one-sided emergency motion will have only a skewed and incomplete presentation of the facts.

**B.**     **John Lezdey Has Failed to Demonstrate Good Cause for a Protective Order**

Lezdey seeks to have this Court indefinitely postpone his deposition until his doctor opines that he is fit to travel. Although the motion is framed as a postponement until after December 15, 2004 (when Lezdey is scheduled for an MRI), Lezdey fails to request a postponement for a specific period of time. The resulting effect is a request for an indefinite postponement.

In order to postpone a deposition for an indefinite period of time, the movant has the burden of making a specific and documented factual showing that the deposition would be dangerous to the deponent's health. *See Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987) (finding that a short, conclusory doctor's letter was insufficient to support a blanket 90-day protective order against plaintiff's deposition and instead the court ordered a 30-day continuance where the doctor's letter opined that plaintiff, who suffered from a "mental" condition, could not

---

where the discovery is to be taken while the court in the district where the action is pending issues a decision on the motion. The court that issued the subpoena can then defer to the decision of the court in which the action is pending. *In re Sealed Case*, 141 F.3d 337, 342-343 (D.C. Cir. 1998).

be deposed without a risk of further mental deterioration); *Bucher v. Richardson Hosp. Authority*, 160 F.R.D. 88, 92-93 (N.D. Tex 1994) (refusing to quash deposition of minor who was sexually abused and living in an institution on the ground that she was emotionally and psychologically incapable of giving a deposition because the evidence did not establish that she would be irreparably harmed by giving the deposition); *Deines v. Vermeer Mfg Co.*, 133 F.R.D. 46 (D. Kan. 1990) (permitting deposition of inventor of defective machine in a product liability action notwithstanding submission of doctor's letter which stated that inventor's memory was failing and he suffered from anxiety because the defendant failed to make a specific and documented factual showing of medical reasons why inventor could not be deposed).

As the Court wrote in *Medlin:*

> In granting a Rule 26(c), Fed.R.Civ.P., protective order prohibiting a deposition, the Court may not abdicate its responsibility by unquestionably accepting a doctor's summary opinions. The opposing party has a right for itself and on behalf of the Court to examine the matter in more detail.

*Medlin*, 113 F.R.D. at 654.

Lezdey has failed to make a specific and documented factual showing that a deposition on November 9, 2004 would be dangerous to his health. Instead, the declaration of his neurosurgeon, Dr. Papavasiliou, is a summary opinion insufficient to demonstrate the good cause needed for the deposition delay Lezdey seeks. As set forth above, the doctor's declaration does not state that he ordered Lezdey not to travel short distances or explain why traveling short distances, such as from Cape Cod to Hyannis or Brewster, Massachusetts, would pose a risk to Lezdey's health. The declaration does not state that Dr. Papavasiliou ordered Lezdey not to leave his house to facilitate his recovery. The declaration does not state that Dr. Papavasiliou recommended that John Lezdey not go to the grocery store, restaurants, or the pharmacy. Indeed, it is obvious that Lezdey can, and does, travel, because he traveled from his home to his doctor's

office.  Although the doctor states that "[a]ny such travel" . . . "may exacerbate John Lezdey's condition," this paragraph is ambiguous at best in that "such travel" appears to refer to a long trip from Cape Cod, Massachusetts to the trial court in Arizona and not a short trip from Cape Cod to Hyannis.  Declaration of Dr. Papavasiliou ¶5.

In addition, the progress note attached to Dr. Papavasiliou's declaration, dated October 15, 2004, fails to corroborate Lezdey's claim that he cannot travel a short distance for his deposition.   The progress note states that Lezdey's fracture is healing and that he is "neurologically stable."  In addition, the progress note reports that Lezdey denies paresthesia and weakness and that his sleeping pattern has not been interrupted.

Neither does Lezdey's unsworn statement support the entry of a protective order to delay his deposition for an indefinite period of time.  The unsworn statement is not competent evidence and, considering the discovery obstruction and other abuses Lezdey perpetrated in the Arizona Action, Lezdey's unsworn statement should be reviewed skeptically (at best).  Lezdey states that he has not left his house except to go to the hospital or the doctor.  Even if this is true (and would have been more credible if set forth in a declaration under penalty of perjury), Lezdey does not state that his home confinement was due to doctor's orders.  He does not say this because it does not appear to be true.

Lezdey may be concerned about trips outside his house for fear of falling and exacerbating the injury to his vertebra.  Counsel for Arriva reasonably offered to move the deposition closer to John Lezdey's home – from Hyannis to Brewster – to accommodate his concerns.  Counsel for Arriva also offered to take the deposition in John Lezdey's home and offered to take periodic breaks.  A deposition in the home of an injured or ill deponent is not outrageous or unprecedented.  *See, e.g., Haviland & Co. v. Montgomery Ward & Co.*, 31 F.R.D.

578, 579-580 (S.D.N.Y. 1962). In *Haviland*, the U.S. District Court for the Southern District of New York ordered the deposition of an 80-year old officer of the defendant corporation to be conducted at his home in France or some other convenient place in Limoges, France (conditioned on the plaintiff paying for the defense counsel's air fare) where an affidavit of the officer's doctor stated that travel to the United States was prohibited. *See id.*

Another accommodation to ease Lezdey's concerns could be to have a nurse accompany him to his deposition. The nurse could travel with Lezdey to provide protection against falls on his way to and from the deposition. Further, a comfortable cushioned chair could be brought into the conference room for Lezdey's deposition to alleviate the pain he claims is caused by sitting on a hard surface.

Arriva has a right and significant interest in taking Lezdey's deposition in this case. He was (and is still believed to be) a significant driving force behind AlphaMed and this litigation. As a former director and employee of AlphaOne (now known as Arriva) and a founder, former director, former shareholder, and current patent counsel of AlphaMed, Lezdey has knowledge of AlphaMed's claims that Arriva has masterminded and participated in a scheme to unfairly compete with AlphaMed in the race to bring AAT-derived pharmaceutical products to market through a pattern of criminal activity. *See, e.g.*, Second Amend. Compl. ¶1 [D.E. 263]. He also has personal knowledge of the '859 patent for a purported method of treating eye and ear infections with AAT, which is the subject of AlphaMed's two counts seeking a declaratory judgment that AlphaMed is the owner of the '859 patent and that Arriva purportedly infringed that patent. Lezdey claims to be the inventor of this purported method of treatment, and he prosecuted the patent.

Considering Lezdey's history of discovery evasion, great care must be taken to prevent the type of discovery abuses Lezdey perpetrated in the Arizona Action. Because Lezdey has failed to demonstrate good cause to indefinitely delay his deposition, his emergency motion for protective order should be denied.

## IV.    **CONCLUSION**

Based on the foregoing, Lezdey's Emergency Motion for Protective Order should be denied.

{M2173070;1}                                    14

Respectfully submitted,

**AKERMAN SENTERFITT**
One Southeast Third Avenue
28th Floor
Miami, FL 33131-1714
Phone: (305) 374-5600
Fax: (305) 374-5095
Email: jgoodman@akerman.com

By: _____
      Jonathan Goodman
      Florida Bar Number: 371912
      Julie E. Nevins
      Florida Bar Number: 0182206


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished **Via hand delivery** this 4 day of November, 2004 to: **James E. McDonald, Esq.**, Duane Morris LLP, 200 South Biscayne Boulevard, Suite 3410, Miami, Florida 33131; and **Via U.S. Mail** to **Steven E. Eisenberg, Esq.**, Feldman, Gale & Weber, P.A., Miami Center, 19th Floor, 201 South Biscayne Boulevard, Miami, Florida 33131-4332; and **Jason A. Crotty, Esq.**, Morrison & Foerster, 425 Market Street, San Francisco, CA 94105-2482.

_____
Julie E. Nevins